WO

NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| JOHN D. PARKER II and REGINA PARKER, husband and wife; JERALD C. THOMPSON and LESLIE C. THOMPSON, husband and wife; WITASICK, PARKER & THOMPSON, a purported defunct partnership,<br><br>    Plaintiffs,<br><br>vs.<br><br>KEVIN JOHN WITASICK and WHITNEY WITASICK, husband and wife,<br><br>    Defendants. | No. CV-06-903-PHX-GMS<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

Pursuant to the stipulation of the parties, the Court held a non-jury trial on the Plaintiffs' Complaint on September 1 and 2. Plaintiffs filed a post-trial memorandum on September 9 (Dkt. # 122), Defendants filed a response on September 16 (Dkt. # 127), and Plaintiffs filed a reply on September 23 (Dkt. # 131). Pursuant to Federal Rule of Civil Procedure 52, the Court hereby makes its findings of fact and conclusions of law.

## I. FINDINGS OF FACT

1. Prior to September 1, 1999 Defendant Kevin Witasick ("Witasick") practiced law under the auspices of Kevin John Witasick and Associates, ("KJWA").

2. Defendants paid certain expenses from the operations of KJWA.

3. These expenses included, among other things, premium payments on Witasick's disability income policy ("income policy"), and on his disability business overhead reimbursement policy ("reimbursement policy"). The income policy provided for maximum benefits of up to $15,000 a month for life should Witasick become disabled. The reimbursement policy provided for a maximum monthly benefit payment of $53,725.00 for up to twenty-five months, or a total maximum payment of $1,343,125.00 for reimbursement of Witasick's business expenses in the case of his disability.

4. Prior to September 1999, the Witasicks moved to Virginia and opened a Virginia law office in addition to their Arizona law office. They operated their Virginia office out of several rooms in their home. The home they purchased in Virginia was the Stoneleigh estate.

5. On September 1, 1999 Witasick announced that he would henceforth be practicing law in a partnership – Witasick & Parker. Witasick's partner was John D. Parker II ("Parker"), a Plaintiff in this action. Parker would oversee the operation of the Phoenix office. Witasick and Parker thereafter held themselves out as partners.

6. Witasick and Parker arrived at certain agreements concerning their partnership. They agreed that the partnership was valued at 1.6 million dollars. They agreed that Parker would pay Witasick $800,000.00 to purchase his interest in the partnership. They agreed that Parker and Witasick would take equal draws from the partnership in the amount of $17,000.00 a month. They agreed that $7,000.00 of Parker's draw would be used to service Witasick's loan on his Stoneleigh property in Virginia. The monthly payment of $7,000.00 would thus be recorded as income to Parker, and noted as a payment on Parker's buy-in to the partnership, but would be sent directly to the Virginia bank by the partnership to service Witasick's personal loan.

7. Parker and Witasick never arrived at agreement as to what would be the division of partnership profits in any particular year, nor was there any agreement concerning a formula by which the division of such profits would be calculated.

8. There was no agreement as to what legal form the partnership would take.

1    9. Certain other matters also remained the subject of ongoing negotiations between Parker and Witasick. For example, Parker was aware that Witasick continued to make certain expense payments from the income of the business. These expenses included payments on the mortgage for the building at 830 North First Avenue (the building in which the partnership's Phoenix office was located), mortgage payments on real estate both at 36th Street and in Glendale, office payments for Robert Lewis, and car payments.

10. There was also some testimony suggesting that Witasick had the firm pay insurance premium payments, tax payments, payments made in connection with the Stoneleigh property that may not have been attributable to the business operations of the partnership, and payments made to Mrs. Witasick that may or may not have been earned by her.

11. Plaintiffs did not introduce any evidence at trial that would serve to identify the amount or duration of any specific payments that the Plaintiffs claim were made by the partnership on the Witasicks' personal obligations during this time.

12. In ongoing negotiations concerning the terms of the partnership, Parker suggested that it would be appropriate, if the firm were going to continue to make personal payments on assets belonging to the Witasicks, that the Witasicks transfer some or all of these personal assets to the partnership. No such transfers were made.

13. In the spring of 2000, Witasick began having discussions with Plaintiff Jerald Thompson ("Thompson") concerning the possibility of Thompson joining Witasick & Parker as a partner.

14. Parker understood that Thompson would be required to pay a buy-in to the partnership.

15. As of July 1, 2000, Witasick and Plaintiffs Parker and Thompson held themselves out to the public as practicing in a partnership named Witasick, Parker and Thompson ("W, P & T").

16. There was never an agreement among the partners as to the value of the partnership or the amount or type of contribution that would constitute Thompson's buy-in

to the partnership. The parties to this action never arrived at agreement as to what would be the division of partnership profits in any particular year, nor was there any agreement concerning a formula by which the division of such profits would be calculated.

17. There was no agreement as to what legal form the partnership would take.

18. As of July 1, 2001, Thompson was paid a draw of $10,000.00. Parker continued to be paid a draw of $17,000.00 with $7,000.00 of this amount being credited toward his buy-in. The personal income taxes due on the draws paid to either Parker or Thompson were not paid by the partnership.

19. After October 2000, the attribution of the $7,000.00 payment to Parker's partnership buy-in on the Stoneleigh note was discontinued, and Parker received a straight draw of $10,000.00. When, later, a tax dispute developed about the income attributed to Parker for the $7,000.00 monthly payments on the Stoneleigh note that occurred in the year 2000, Parker indicated in a sworn statement to the Internal Revenue Service that no partnership was ever consummated with Witasick and that his tax liability should only be for the $10,000.00 he was paid monthly as an independent contractor, as opposed to the $17,000.00 with which he was credited on the partnership books.

20. Parker and Thompson were aware that Witasick was receiving a higher draw than they were and that the partnership continued to make payments on the personal assets of the Witasicks. The Plaintiffs further acknowledge that in early 2001 the Witasicks assumed payment for certain of these personal obligations. No evidence was introduced specifying the individual identity or amount of the separate payments that the Witasicks began paying in early 2001, or exactly when the Witasicks began making these payments.

21. In March of 2001 the Witasicks refinanced the 830 North First Avenue property and took between five to six hundred thousand dollars of the loan proceeds for their personal use. This refinancing raised the monthly rent amount paid by the partnership on the building in the approximate amount of five to six thousand dollars. Plaintiffs provided no evidence as to the amount of the rental prior to, or after, the refinancing. Nor did Plaintiffs provide

- 4 -

1 any evidence as to the fair market rental price for the 830 North First Avenue property during
2 the period at issue.

3     22. There was never a transfer of any of the Witasicks' personal assets into either Witasick & Parker or W, P & T. Nor was there ever an agreement by any of the Witasicks to transfer assets into either partnership.

    23. Witasick was placed on disability inactive status by the Arizona Supreme Court on October 12, 2001. He remains in that status and has not been eligible to practice law in Arizona since October 12, 2001 because of his disability inactive status. The partnership of W, P & T ceased to operate after October 12, 2001.

    24. Immediately after October 12, 2001, Parker and Thompson formed the partnership of Parker & Thompson P.L.L.C. They then provided notice of the new partnership to the clients of their predecessor partnerships and continued their law practice in the same locations.

    25. Parker & Thompson paid the rental on the 830 North First Avenue building from October 2001 through January 2002. Parker & Thompson paid other operating expenses of the law firm including employee salaries and employee related expenses, a credit line payment, mailings, service and other operational expenses. Insufficient evidence was introduced at trial concerning the specific costs and monthly expenses incurred and paid by Parker & Thompson, or expenses paid by Parker & Thompson that were the debts of W, P & T, Witasick & Parker, or KJWA, for the Court to determine any such amounts.

    26. After January 2002, any rental obligation owed on 830 North First Avenue was assumed by the Witasicks, although Parker & Thompson continued to locate their practice at 830 North First Avenue for some period. Also for an unspecified period, Parker & Thompson used, without cost, other necessities provided by the Witasicks, including copiers and some furniture. No evidence was introduced relating to the value of the rent or other materials provided by the Witasicks to Parker & Thompson during this period. Although various credit lines were serviced by Parker & Thompson and some were paid off by Witasick, insufficient evidence was introduced for the Court to determine what, if any, of the

debts paid by Parker & Thompson were the debts belonging to its predecessor partnerships or were the personal obligation of the Witasicks.

27. Parker & Thompson continued to run a Virginia office. At the time that Parker & Thompson came into existence, their Virginia office was no longer located at Stoneleigh, but was located at a Dupont Office building. No rents were due at this location, or at the location to which the office was subsequently moved.

28. After Witasick was placed on disability/inactive status he made claims against both his income policy and against his reimbursement policy. The named owner and beneficiary of the reimbursement policy was Kevin Witasick. The policy had never been updated to designate any of the successive partnerships involved in this action as either an owner or a beneficiary of the reimbursement policy.

29. In making their claim on the reimbursement policy, the Witasicks represented to their disability insurer, Standard Insurance, that they were "the only ones 'on the hook'" for the ongoing debts of Parker & Thompson, and they owed all the assets as well as the expenses. They further alleged that an "overhead expense" of the business was the "building loan to the tune of $880,000, and the business lines of credit, where close to $500,000 is owed." The Witasicks further asserted that they were paying Parker & Thompson's ongoing operating expenses out of their own pockets, including the payment to Parker & Thompson of a management fee for managing the partnership for them.

30. Witasick submitted Parker & Thompson's expense statements in support of Witasick's claim for business reimbursement expenses. Witasick had discussions with Parker & Thompson's office manager seeking to get her to include as many expenses as possible in Parker & Thompson's statements in aid of his application for insurance payments on the reimbursement policy. Defendant Kevin Witasick repeatedly promised to Plaintiffs that he would pass along to Parker & Thompson the proceeds of the reimbursement policy that represented expenses incurred by Parker & Thompson.

31. Parker & Thompson became aware that the Witasicks were receiving payments on the reimbursement policy from Standard. Remittance advises of these policy payments

were sent to W, P & T. Payments under the policy, however, were apparently given directly to Witasicks and Witasicks did not pay any of the proceeds to Parker & Thompson or either of the individual Plaintiffs. Plaintiffs received and offered into evidence statements from Standard sent to W, P & T for the months of February, April, May, June, July and September 2002 which establish that certain payments were made on Witasick's two disability policies.

32. Parker and Thompson were not employees of, and received no wages from, the Witasicks.

33. Plaintiffs subsequently became aware that disagreements between Witasick and Standard about both the income policy and the reimbursement policy resulted in an adjustment between the Witasicks and Standard. Eventually, the Witasicks settled their claims on both policies with Standard in the total amount of 1.875 million dollars. Witasick told Thompson that as a part of the settlement he returned and/or relinquished all of the reimbursement policy payments he had received except those that were attributable to the rent he had paid on the 830 North First Avenue Office Building.

34. Approximately ninety percent of Thompson's time while working at W, P & T and for more than a year thereafter was spent in representing Witasick in the bar complaints against him, and in representing W, P & T, Parker & Thompson, and KJWA in legal malpractice actions. No evidence was offered to determine how much time Thompson worked, how much time he was representing Witasick on bar complaints personally as opposed to representing the partnership in malpractice actions, whether he gave up other work to work on such matters, or what amount of his charged rate was realized as firm profit. No similar evidence was offered concerning Parker's work and realization rates.

35. Plaintiff Thompson testified that after the fact he reviewed all of the partnership expenditures during the term of the Witasick & Parker partnership and during the term of the W, P & T partnership. He then unilaterally characterized expenses as being paid to Witasick or for Witasick's benefit, expenses that were paid to Parker or for Parker's benefit, and expenses that were paid to him or for his benefit. Plaintiffs request that the Court order the Witasicks to pay Parker sufficient funds to provide him with an equal distribution of

1 assets made to Witasick during the term of the Witasick & Parker partnership and to pay Parker and Thompson an amount to provide them with an equal distribution of assets made to Witasick during the term of the W, P & T partnership.

36. Thompson did not and could not specify or break down the individual expenses or amounts that he attributed to each partner in any of the calculations pertaining to the Witasick and Parker partnership or the W, S & T partnership. He testified that he made such calculations in 2003-04 and that, when he did so, he had the firm's computer records in front of him. But prior to testifying, he apparently had not reviewed these records or calculations because he was unable, except in general terms, to identify the expenses that he attributed to the benefit of the Witasicks in making his summary damages calculation.

37. On cross-examination Thompson identified that he attributed the $7,000.00 made monthly on the mortgage of the Stoneleigh estate as being for the benefit of Witasick in making his summary damages calculation. He did not attribute it to Parker as salary for purposes of being a partnership buy-in.

38. Parker does not make claims against the Witasicks for any period predating September 1, 1999, nor does Thompson make any claims against the Witasicks for any period predating July 1, 2000. Neither Parker or Thompson makes any claims for reimbursement for services rendered to the Witasicks after October 12, 2001.

39. Any finding of fact deemed a conclusion of law is so adopted.

## II. CONCLUSIONS OF LAW

**A. Claims For Breach of Contract, Accounting and Breach of Fiduciary Duty**

1. Plaintiff brings three principal causes of action. These include the actions for breach of contract, accounting and breach of fiduciary duty.

2. The Arizona Revised Uniform Partnership Act ("RUPA") specifies that if parties have agreed to associate "to carry on as co-owners of a business for profit" then a partnership exists. A.R.S. § 29-1012(A) (Supp. 2008), *Turley v. Ethington,* 213 Ariz. 640, 645, 146 P.3d 1282, 1287 (Ct. App. 2006) ("Arizona has adopted the RUPA, A.R.S. §§ 29-1001 through

1  29-1111, under which two or more persons create a partnership when they "associat[e] . . .
2  to carry on as co-owners of a business for profit.").

3. If the parties have so agreed, then the terms of the partnership are defined by the RUPA unless a partnership agreement specifies otherwise. A.R.S. § 29-1003(A) (Supp. 2008). One of the relevant terms of the RUPA is that "each partner is entitled to an equal share of the partnership profits and is chargeable with a share of the partnership losses in proportion to the partner's share of the profits." A.R.S. § 29-1031(B) (Supp. 2008). Therefore, if the parties formed a partnership as defined by the RUPA, it does not matter that they did not agree on the extent to which each partner might claim a share in partnership profits. Pursuant to the RUPA they would all be entitled to an equal share.

4. Nevertheless, the Court need not decide whether a partnership existed in this case because, even if the Court determined that a partnership or partnerships existed, Plaintiffs have failed to bear their burden of establishing with reasonable certainty the resulting damages. It is true that "once the right to damages is established, uncertainty as to the amount of damages does not preclude recovery," *Lewis v. N.J. Riebe Enters., Inc.,* 170 Ariz. 384, 397, 825 P.2d 5, 18 (1992). Nevertheless, "speculation and conjecture" cannot provide the basis for an award of damages. *See id.* The Plaintiff must provide evidence that makes "an approximately accurate estimate possible." *Gilmore v. Cohen,* 95 Ariz. 34, 36, 386 P.2d 81, 82 (1963) (citing *Martin v. LaFon,* 55 Ariz. 196, 100 P.2d 182 (1940)). And, while the required quantum of evidence depends on "the individual circumstances of each case, . . . the jury must be guided by some rational standard." *Short v. Riley,* 150 Ariz. 583, 586, 724 P.2d 1252, 1255 (Ct. App. 1986).

5. The damages testimony provided by Plaintiffs on their breach and accounting claims is identical and is, at best, insufficient to establish a rational standard by which the Court could grant damages on either claim in this case.

6. Plaintiffs designated Thompson at trial as the witness most competent to answer the Court's questions as to damages. He was the principal witness to testify as to how the Plaintiffs calculated their alleged damages for breach and accounting. He testified that in

- 9 -

2003 and 2004 he reviewed all of the partnership expenditures during the Witasick & Parker partnership and determined on his own whether expenses paid by the partnership should be attributed as being paid to Witasick or for Witasick's benefit. He then repeated the process for the period of the W, P & T partnership. He then prepared and admitted at trial the summary sheet which contains only the final dollar amounts for each period that, according to Parker's characterization of partnership expenses, were paid to Witasick, were paid to Parker, and were paid to Thompson. The summary then contains the amounts that Plaintiffs claim should be paid to the them for the period of the putative partnerships that would "equalize" the distributions to the partners during the terms of their respective partnerships. Thompson then made a pre-judgment interest calculation for these respective totals and now requests that the Court enter judgment for both he and Parker in these respective amounts with pre-judgment interest.

      7. Thompson had apparently not kept independent records of his financial review that produced the summary and/or had not reviewed the basis of his summary calculation prior to his testimony at trial. Thompson did not orally provide, or admit into evidence, any of the underlying financial information from which he prepared this summary. He did not testify with any specificity as to what the components were or the amounts of the component partnership expenses that he determined were paid for the benefit of the Witasicks. He testified that he made the compilation in 2003 and 2004 and when he did so all "the computer records" from which he made the calculations were right in front of him. But at trial he did not offer such computer records and introduced no other evidence as to what were the elements or the amounts making up the summary. In response to questioning by the court Thompson answered:

> A.    I did have the breakdowns at the time I compiled the numbers.
>
> Q.    But those haven't been matters that you've introduced in, for example, the pre-trial statement today?
>
> A.    No, Sir.

> Q. So if I were to determine that some were perhaps indicated for consideration for damages but others were not, I couldn't make that breakdown myself, and you don't have anything in evidence that would allow me to do so?
>
> A. Correct.

Dkt. # 128 at 185.

8. In cross-examination of Thompson, the Witasicks effectively demonstrated that at least some of the important assumptions on which Thompson based his summary were incorrect. Defense counsel elucidated, for example, that in preparing the summary, Thompson charged Witasick with the $7,000.00 mortgage payments made to him from Parker's draw from September 1999 through June 2000 (such payments continued through October 2000). It is true that the partnership paid that amount directly to service the Witasicks' loan on Stoneleigh, but it is also uncontested that the amount, at least for the months from September 1999 through October 2000, constituted part of Parker's draw which was paid to Witasick as part of Parker's buy-in to the partnership. Even if the parties did not have a completed partnership agreement, they had agreed to the payment of that amount from Parker's draw as a buy-in to the partnership. Plaintiff thereby erred in his damages calculation in attributing the $7,000.00 payments to Witasick as opposed to attributing them to Parker for the period in which such payments were made.

9. On redirect, Thompson identified a few of the categories of expenses that he attributed to Witasick in the preparation of his summary. These included the mortgage on the 36th street property, various travel expenses, the premium on the income replacement policy, and payment on a line or lines of credit that, according to Thompson, financed Witasick's personal expenses. Even though the Witasicks did not contest on cross-examination Plaintiffs' assertion that the putative partnership made specific payments for some period for such things as the Witasicks' mortgage on the 36th street property, Plaintiffs still have prevented the Court from calculating damages that might be due for such payments because they have provided no evidence indicating what the amount of the mortgage payment was and for what period the partnership paid it. They have not done so for any of

the charges that they claim were payments made by the partnership for the benefit of the Witasicks. Nor have they indicated when the Defendants assumed payment of their personal obligations as both Plaintiffs testified that they eventually did.

9. The Court is under no obligation to uncritically accept Thompson's summary especially when, (1) Plaintiffs cannot identify the breakdown of partnership finances that produced it, thus preventing any of Plaintiffs' claimed attributions from being verified or challenged, (2) to the extent that the attributions for the summary were identified on cross-examination, the Court disagrees with a critical and financially significant attribution (the misallocation of the monthly $7,000.00 buy-in payment) that demonstrates at least one significant error in the summary, (3) as to any attributions that were not identified but not significantly challenged on cross-examination, the Plaintiffs have not provided the Court with any amounts or estimates of amounts that the partnership actually paid so that the Court might have a rational basis for determining damages for those categories of expenses that it deemed legitimate; (4) Thompson, who prepared the summary, testified that he was "not very good at financial analysis," and (5) the evidence in this matter more than amply demonstrates that over time both parties have taken inconsistent positions with respect to the existence of a partnership. Their varying assertions of whether a partnership existed appear to depend on what position would benefit the proponent at the time. This "flexibility" in manipulating the facts negatively affects the Court's evaluation of all parties credibility. Therefore, the Court doubts that Thompson conducted his financial analysis with an objective eye.

10. Under such circumstances, Thompson's unsupported damage summary is insufficient to provide a rational standard by which this Court could calculate a damage award for breach of contract or an accounting.

11. Plaintiffs claim for breach of fiduciary duty, similarly does not require a determination of whether a partnership existed to be rejected. Plaintiffs' fiduciary duty claim is that the Witasicks breached their duty to Plaintiffs by retaining all of the proceeds of the reimbursement policy to which Plaintiffs, as Witasick's partners, were entitled. Plaintiffs' fiduciary duty claim fails in the following respects.

- 12 -

12. Plaintiffs cannot lay claim to proceeds unless they can show both that, (1) the proceeds were paid to Witasick on a legitimate basis, and (2) they had a right to those proceeds. They have not done so. Plaintiffs have established that the Witasicks, in addition to including reimbursement claims for expenses they may have actually paid, also made false statements to Standard to support the Witasicks' claim for the reimbursement of business expenses. In such misstatements the Witasicks claimed as personal expenses either, (1) expenses that were never paid, such as a management fee to Parker & Thompson, or ( 2) expenses that the Witasicks claimed as personal expenses that were actually paid by others, such as the ongoing expenditures made by the Parker & Thompson partnership. It is not clear, although it is possible, that expenses that were incurred by others would be reimbursable under the policy, but that would presumably require the Plaintiffs to demonstrate that the particular expenses that they incurred, and that were submitted by the Witasicks to the insurance company apparently as the Witasicks' own, were covered expenses under the policy when incurred by the Plaintiffs. This Plaintiffs have not done. Nor have they presented any evidence of the expenses which were the bases on which the insurance company determined to pay insurance proceeds. They have not demonstrated that either they, W, P & T, or Parker & Thompson were beneficiaries under the policy.

13. There are additional respects in which they have failed to establish any right to such payments. Parker and Thompson both testified that Witasick eventually disputed with Standard the extent of his right to receive benefits under both his income policy and his reimbursement policies. They both testified that Witasick resolved the dispute with the insurance company by receiving a total payment of 1.875 million dollars in settlement for his claims under both policies. Although Plaintiffs make no claim to benefits received by Witasick under his income policy, they have made no attempt to distinguish what amount, if any, of the 1.875 million dollar payment was attributable to the reimbursement policy. The only testimony offered at trial was that Witasick told Thompson that all but $300,000.00 of the 1.875 million amount was attributable to the income policy to which Plaintiffs make no claim. According to Witasick, the remaining $300,000.00 was attributable to the mortgage,

admittedly paid by Witasick since February 2002, on the 830 North First Avenue property. If in fact such amounts were attributable to the mortgage paid by Witasick, the Plaintiffs would have no claim to them. Plaintiffs have provided no information to suggest otherwise.

14. While Witasick may have been less than candid in his conversation with Thompson concerning the attribution of the insurance proceeds to the separate policies, Plaintiffs have provided the Court with no alternative. The burden of proof belongs to Plaintiffs. While Plaintiffs want to recover the insurance proceeds paid to Witasick, they have not provided the Court with any idea of the actual proceeds that Witasick received from Standard on the reimbursement policy. Nor have they provided the Court with any idea whether such payments were due to Witasick, due to the Plaintiffs, or due to anyone at all. Under such circumstances Plaintiffs have not carried their burden of proof.

**B. Alternative Counts**

15. Plaintiffs pleaded several alternative counts in the event that the Court determined that there was no partnership agreement on which Plaintiffs could state a claim. These included the counts of fraud, non-disclosure (which count the court construes as negligent misrepresentation), unjust enrichment, conversion, and a wage claim.

16. The fraud and misrepresentation counts as pleaded assert that if the Court determines that there was not an enforceable partnership agreement, then Witasick either defrauded Plaintiffs or made a material misrepresentation to them, by assuring them that he would enter a partnership agreement with Plaintiffs when he in fact had no intention of doing so. "A showing of fraud requires (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it be acted upon by the recipient in the manner reasonably contemplated; (6) the hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the right to rely on it; (9) his consequent and proximate injury." *Echols v. Beauty Built Homes, Inc.*, 132 Ariz. 498, 500, 547 P.2d 629, 631 (1982). Meanwhile, "the tort of negligent misrepresentation 'is committed by the giving of false information intended fo the guidance of others and justifiably relied upon by them causing damages if the giver of the false information fails to exercise

- 14 -

reasonable care or competence in obtaining or communicating the information.'" *St. Joseph's Hosp. & Med. Ctr. v. Reserve Life Ins. Co.*, 154 Ariz 307, 312, 742 P.2d 808, 813 (1987). Plaintiffs submitted insufficient evidence at trial to establish the elements of fraud or misrepresentation. They never persuasively identified any statement or lack thereof by Mr. Witasick that occurred in circumstances that would suggest to the Court that the Plaintiffs were being misled by Mr. Witasick as to his future intent to sign a partnership agreement, or that they had a right to rely on any misleading statements as to his intent.

17. Both Plaintiffs were substantially aware of the circumstances and status of their partnership negotiations, including the areas in which no agreement had been reached with Witasick. Nevertheless, both Plaintiffs were being paid more than they had ever previously made in their legal careers, and, they believed that if they could consummate the arrangement on the terms for which they hoped, they would stand in even better financial stead as partners in the firm. It was for this and other reasons, rather than being misled by Defendant Kevin Witasick as to his true intent with respect to the partnership agreement, that the parties continued to perform as his partners, and continued to permit him to have a larger draw and make personal payments from the proceeds of the business while attempting to negotiate a final agreement. Such facts do not give rise to a cause of action for misrepresentation or fraud. *See, e.g., Arnold and Assoc. Inc. v. Misys Healthcare Sys.,* 275 F. Supp.2d 1013, 1028-29 (D.Ariz. 2003). Even assuming the Court could find liability on such claims, the Plaintiffs have submitted no sufficient evidence on which the Court could base a damages award for the reasons it has spelled out above.

18. The Plaintiffs further pled alternative claims for unjust enrichment, conversion, and a wage claim. Plaintiffs failed to preserve these claims by placing them in the proposed final pretrial order. Even so, they have not established any of them.

19. To make a claim for unjust enrichment, Plaintiffs must establish that : (1) plaintiff conferred a benefit upon the defendant; (2) defendant's benefit is at plaintiff's expense; and (3) it would be unjust to allow defendant to keep the benefit. *USLife Title Co. of Ariz. v. Gutkin*, 152 Ariz. 349, 354, 732 P.2d 579, 584 (Ct. App. 1989). Plaintiffs have established

1  the first element of the cause of action in that they provided a benefit for the Witasicks "both
2  in billing hours, and in working numerous hours on Mr. Witasick's personal bar association
3  problems, and the defense of lawsuits being brought against him."  Nevertheless, the Court
4  cannot conclude that the Plaintiffs have established the second or third elements of the tort.
5  While it is true that the Plaintiffs did work on Mr. Witasick's behalf or for his business that
6  paid some of his personal expenses, they were both paid a minimum of ten thousand dollars
7  a month for doing so.  This was a greater amount than either Plaintiff had ever been paid for
8  full-time legal work from their previous employers.  The Court therefore cannot conclude
9  that "Defendant's benefit is at Plaintiff's expense."  Nor can the Court conclude on the
10 evidence provided that "it would be unjust to allow Defendant to keep" whatever benefit the
11 Plaintiffs may be seeking that resulted from their work on behalf of Witasick.

12         20.  Plaintiffs argue that they paid business lines of credit that resulted from the
13 Witasick's personal debt.  They have failed, however, to provide a sufficient factual basis to
14 support that assertion.  And, as detailed above, they have not adequately supported their
15 claim that they have a right to the proceeds of the reimbursement policy.   They, thus have
16 not adequately supported their claim for unjust enrichment.

17         21.  Plaintiffs assert, in their alleged status as partners, that Defendant has converted
18 the money that was wrongfully paid by the partnership on his personal expenses.
19 "Conversion is an act of wrongful control or dominion over personal property in denial of
20 or inconsistent with the rights of another."  *Huskie v. Ames Bros. Motor & Supply Co., Inc.*,
21 139 Ariz. 396, 402, 678 P.2d 977, 983 (Ct. App. 1984).  Nevertheless, for all the reasons
22 identified in some detail above, Plaintiffs have not identified the wrongful payments or their
23 amount.  The Court, thus, is in no position to make an award for a conversion of money that
24 is unidentified by category or amount.  Nor, to the extent that they claim that the Witasicks
25 converted the insurance proceeds, have Plaintiffs demonstrated that they had the right to
26 control such proceeds.  In such circumstances, Plaintiffs have failed to adequately support
27 any cause of action for conversion.

28

22. The Court has already found that Plaintiffs were not the employees of the Witasicks. Plaintiffs alternative argument to this effect is based on the Witasicks' letter to Standard in which the Witasicks state that they are paying Parker & Thompson a management fee to operate their law firm. The Court is convinced, as Plaintiffs testified, that no such management fee was ever paid. Even if it was, it would not constitute wages. The Court thus finds that at no time material to this Complaint were the Plaintiffs paid a wage by the Witasicks. Thus, Plaintiffs' wage claim fails.

23. Plaintiffs have also made a request for punitive damages in their Complaint. Because they prevail on none of their underlying claims, they are not entitled to such damages. Nor, at any rate, would the facts support such an award, at least as to the Plaintiffs in this case, based on the misdeeds of the Witasicks with respect to the Plaintiffs that have been established.

24. Any conclusion of law deemed a finding of fact is so adopted.

### III. CONCLUSION

For the reasons stated above, the Court finds in favor of the Witasicks and will enter judgment in their favor.

DATED this 30th day of September, 2009.

_____
G. Murray Snow
United States District Judge